## Ledwith et al. v. Buchmiller's Executors.

*Wills—Devises—Rule against perpetuities—Charitable uses.*

1. A devise in a will is void under the rule against perpetuities where the power of alienation is suspended for a period beyond lives in being and twenty-one years and nine months thereafter. If there is any possibility that this may happen, the devise is void.

2. Where, in such case, the particular estate is created with the general purpose of keeping the entire estate for an unlawful period, the particular estate must fall with the ulterior estate.

3. Where a testator devised the income of certain real estate to his wife and daughter for life and the life of the survivor, and then to the issue and descendants of the daughter for life, and during the life of the survivor of them, and on the death of the daughter without leaving issue, or upon the death of the survivor of such issue, to certain charities named, there being no issue of the daughter *in esse* at the time of his death, such devise is in violation of the law against perpetuities and void.

4. The ultimate disposition of the estate to charitable uses does not save a devise, under the Acts of April 18, 1853, § 9, P. L. 503, and May 9, 1889, P. L. 173, from being void under the rule against perpetuities.

Case stated. C. P. Lancaster Co., June T., 1923, No. 45.

*John M. Groff*, for plaintiffs; *John N. Hetrick*, for defendant.

LANDIS, P. J., July 28, 1923.—The facts of this case have been agreed upon by the above-named parties, and the question to be determined by us is whether the plaintiffs are entitled to certain real estate hereinafter described.

D. F. Buchmiller died on Dec. 12, 1922. He left surviving him a widow, Caroline S. Buchmiller, and one child, a daughter, whose name is Mary B. Ledwith. Mrs. Ledwith is of lawful age, and at the time of her father's death had no children, or the issue of children, and has none now. At his death, he was seized in fee simple of a "lot or piece of land, situated on the west side of North Queen Street, in the City of Lancaster, County of Lancaster and State of Pennsylvania, on which is erected, fronting on North Queen Street aforesaid, a three-story brick apartment and store building, Nos. 130, 132 and 134, and in the rear, fronting on Market Street, a six-story brick factory building and other improvements; containing in front on North Queen Street aforesaid 32 feet 2¼ inches and extending in depth of that width to Market Street aforesaid 245 feet. Bounded on the north by property of the Northern National Bank of Lancaster, Pa., on the east by North Queen Street aforesaid, on the south by property now or late of the estate of Samuel Hatz, and on the west by said Market Street."

The said D. F. Buchmiller left a last will and testament, dated July 7, 1920, to which were afterwards attached certain codicils which do not affect the question at issue. By the said will he made the following disposition of the above-described real estate: "Item. I give and bequeath the net rents, income and revenue of my three-storied brick store property, Nos. 130-134 North Queen Street, and the six-storied brick factory building in the rear thereof, Nos. 131-135 North Market Street, in the City of Lancaster, Pennsylvania, to my wife, Caroline S. Buchmiller, and my daughter, Mary B. Ledwith, in equal shares or parts, during their natural lives, and, after the death of either of them, I give and bequeath all of said net rents, income and revenue to the survivor of them during her natural life. At the death of the survivor of them, I give and bequeath the net rents, income and revenue to the issue and descendants of my daughter, Mary B. Ledwith, if any, *per stirpes*, for and during the term of their natural lives and the life of the survivor of such issue and descendants; and in the event of the death of my said daughter, Mary B. Ledwith, without leaving issue or descendants, then, at that time, or upon the death of the last of such issue or descendants, if any, I order and direct my executors to sell the said premises, either at public or private sale, for the best price that can be obtained therefor; and I then give the net proceeds thereof to my said executors, in trust, to invest the same and keep the same invested in good lawful securities, and the net income thereof I hereby order and direct my said executors to pay over annually, in equal shares, to the Lancaster General Hospital, the Young Men's Christian Association of Lancaster, Pa., the Young Women's Christian Association of Lancaster, Pa., and the Shippen School for Girls of Lancaster, Pa., for the use of the said various institutions as hereinbefore stipulated." The plaintiffs contend that this provision of the testator's will offends against the laws relating to perpetuities, and that the devise being void, the real estate descended to them under the intestate laws of this State.

Let us as briefly as possible collate the provisions of this will, so that we may more easily understand its meaning. The testator gave to his wife and daughter, without the intervention of a trustee, the rents, issues and revenue of his property above described in equal shares during their natural lives, and, after the death of either, to the survivor during her natural life. This he had a right to do, for both were in being at his decease.

He then, at the death of the survivor, gave the same to the issue and descendants of his daughter, if any, *per stirpes*, for and during the term of their natural lives and the life of the survivor of such issue and descendants.

4 D. & C.

It is clear that the devise over so made may extend not only to those not in being at the time of his death, but who may not be in being during twenty-one years thereafter. Mrs. Ledwith is now without children, but she may have children hereafter, and her children may have children. Both of these events may happen more than twenty-one years after the testator's death.

There is no gift of the fee to any one and no direction to sell, unless Mrs. Ledwith should die without leaving issue or descendants, or when all of said issue or descendants may be dead, and, in that event, the executors are ordered to sell the property and to hold the net proceeds forever in trust. They are to pay over the income to the Lancaster General Hospital, the Young Men's Christian Association, the Young Women's Christian Association and the Shippen School for Girls in equal shares.

The rule against perpetuities, it is said, is an artificial rule, made by the judges of England and transmitted to her colonies at an early date. It owes its birth and the shape that it has assumed to executory devises of chattels real. It was held in the celebrated Duke of Norfolk's Case, 3 Chan. Cas. 1, by Lord Chancellor Nottingham, that the limitation over was good, provided the contingency upon which the limitation over was to take effect happened within a life in being, and that any limitation is good which must take effect within the lives in being. In Scatterwood v. Edge, 1 Salk. 229, the Court of Common Pleas is said to have agreed in holding that "the compass of a life or lives" was a reasonable time, "for let the lives be never so many, there must be a survivor, and so it is but the length of that life." Lord Hardwicke, in Hopkins v. Hopkins, 1 Atk. 580, said: "It is not (in my opinion) material to restrain it to the life of tenant for life of the land, provided it be restrained to the life of a person in being."

In this State, in Hillyard v. Miller, 10 Pa. 326, Gibson, C. J., said: "A perfect definition of a perpetuity has not been given, and the nearest approach to it is found in Lewis on Perpetuities, ch. 12, where it is said to be a future limitation, whether executory or by way of remainder, and of real or personal property, which is not to vest till after the expiration of, or which will not necessarily vest within, the period prescribed by law for the creation of future estates, and which is not destructible by the person, for the time being, entitled to the property subject to the future limitation, except with the concurrence of the person interested in the contingent event."

"The rule against perpetuities is not a rule of construction, but a peremptory command of law. . . . Its object is to defeat intention. Therefore, every provision in a will or settlement is to be construed as if the rule did not exist, and then to the provision so construed the rule is to be remorsely applied:" Gray on Rule Against Perpetuities, § 629.

In City of Philadelphia v. Girard's Heirs, 45 Pa. 9, 26, an intelligible and satisfactory statement of the doctrine and rule was given in the following lucid words: "1. Perpetuities are grants of property, wherein the vesting of an estate or interest is unlawfully postponed, . . . and they are called perpetuities, not because the grant, as written, would actually make them perpetual, but because they transgress the limits which the law has set in restraint of grants that tend to a perpetual suspense of the title or of its vesting. 2. The law allows the vesting of an estate or interest, or the power of alienation, to be postponed, and the accumulation of its increase to be made previous to vesting, for the period of lives in being, and twenty-one years and nine months thereafter, and all restraints upon the vesting that may suspend it beyond that period are treated as perpetual restraints, and, therefore, as void, and, consequently, the estates or interests dependent on them are void; and noth-

ing is denounced by the law as a perpetuity that does not transgress this rule. . . ."

Guided, then, by these rules, does it not follow that the will of the testator offends against the law? The purpose of the testator was evidently to make an unlawful gift. He gave the land in question to his wife and daughter for life and for the life of the survivor. But when he provided that, after the death of the survivor, it should go to the issue and descendants of his daughter, who were not in being at the time of his death and would not likely be within the life or lives in being and twenty-one years and nine months afterwards, and only should be sold after all these contingencies had passed, he, in our judgment, violated these well-known rules of law.

In Johnston's Estate, 185 Pa. 179, a testator devised his real estate to his executors in trust for the period of seventy-five years, giving to the executors active power in the management of the estate and directing them to pay all charges against the land and all legacies out of the rents and profits. After all the charges and legacies were paid out of the rents, he directed his children to select a trustee, and directed that such trustee should collect the rents and profits of the land and, after paying for repairs and taxes, should distribute the balance to his children and their legal descendants until the said period elapsed. At its expiration the trustee was authorized to sell the land, and the proceeds were to be distributed "to and among all my children, share and share alike, that may be then living, and the legal descendants of any of my said children that may be then dead. The legal descendants of such deceased child or children to take, however, only such share and portion of the said proceeds as their deceased parent would have taken if then living." "Held, (1) that the particular estate—the term of seventy-five years given to the trustee—did not violate the rule against perpetuities; (2) that the gift of the ulterior estate in remainder was a future contingent interest repugnant to the rule against perpetuities, and, therefore, void for remoteness; (3) that as testator's general scheme was to keep his estate entire for an unlawful period, and as the particular estate was created for this purpose only, the particular estate must fall with the ulterior estate; (4) that testator died intestate as to his real estate, which accordingly passed at his death to his heirs-at-law." See, also, Gerber's Estate, 196 Pa. 366. In Coggin's Appeal, 124 Pa. 10, it was held that "all future estates limited upon an estate for life, which are not sure to take effect within twenty-one years, with the usual period of gestation added, after the determination of the life estate, are void as within the rule against perpetuities," and that "the validity of the rule that the future interest must vest within a life or lives in being and twenty-one years thereafter must be tested by the possible, not by the actual, events, and if the limitation is to a class, and it is void as to any one of the class, it is void as to all." In Lilley's Estate, 272 Pa. 143, it is said: "A perpetuity is any limitation or condition which may take away or suspend the absolute power of alienation for a period beyond life or lives and twenty-one years thereafter. If there is any possibility that a violation of this rule may happen, the devise is void."

It has been suggested that because the ultimate disposition of the estate is made to certain charities, the Act of April 18, 1853, § 9, P. L. 503, and the Act of May 9, 1889, P. L. 173, save the devise. It seems to us that this identical question is passed upon in Penrose's Estate, 257 Pa. 231. There the testator bequeathed real and personal property in trust for the benefit of a son for his life, and upon his death "unto the lawful issue of my said son, . . . share and share alike, to be paid to them respectively upon their arriving at the age of twenty-one years, the same to be put out at interest . . . and the

4 D. & C.

interest accruing therefrom to be applied to their maintenance and education, respectively, until their arrival at the age of twenty-one years, and in case either of said issue should die before arriving at the age of twenty-one years without issue, I give and bequeath the share of the one or ones so dying unto the survivor or survivors thereof. And if all the lawful issue of my son should die without issue before arriving at the age of twenty-one years, then I give, devise and bequeath the said ground rent and monies unto Richland Monthly Meeting of Friends (at the said Borough of Quakertown). . . ." It was held that the gift over to the charitable use violated the rule against perpetuities and was void.

We are, therefore, of the opinion that the devise made by the said testator of this real estate is void, and that the said real estate belongs to his heirs under the intestate laws of Pennsylvania. For this reason, judgment is entered on the case stated in favor of the plaintiffs.

Judgment for plaintiffs.

From George Ross Eshleman, Lancaster, Pa.